McGinty, Respondent, vs. Brotherhood of Railway
Trainmen, Appellant.

*May 15—June 28, 1917.*

*Life insurance: Forfeiture: Breach of warranties in application:
Pleading: Amendment of answer: False representations: Con-
nivance with examining physician: Estoppel: Evidence: Physi-
cians: Privilege: Waiver: Admissions: Competency of witnesses:
Officer of local lodge: Death certificate: Contradiction: Cause of
death: Declarations by physician: Instructions to jury: Bur-
den of proof.*

1. Where, in an action on a life insurance policy, the answer alleged
   that the assured had, in his application, wilfully and falsely
   warranted that he had never had certain specific diseases, it
   was not an abuse of discretion, after the action had been pend-
   ing nine months and had once been continued for a term, to re-
   fuse leave to amend the answer by setting up a breach of other
   warranties in the application that the assured had never had
   any of the numerous diseases therein specified.

2. In an action on a life insurance policy or certificate the defendant
   company or association may show that false warranties in the
   application of the assured were made with the connivance of the
   medical examiner.

3. Under sec. 4202s, Stats., if the certificate or report of the medical
   examiner of a life insurance company, falsely stating that an
   applicant was a fit subject for insurance, was made by conni-
   vance with the applicant, the company is not estopped to plead
   and prove such falsity in an action on the policy.

4. Sec. 4075, Stats., prohibiting disclosure by a physician of infor-
   mation obtained by him for the purpose of treating a patient,
   does not apply to information obtained by the medical exam-
   iner of a life insurance company from an applicant for insur-
   ance who had ceased to be his patient and whose visit to him
   was as such applicant and not for the purpose of treatment.

5. Where such applicant, of his own volition and at a time when he
   was not a patient, obtained the statement or certificate of the
   examining physician who, as the applicant knew, had knowl-
   edge as to his former health and condition, and then joined with
   the physician in making material representations to the insurer,
   upon which the policy was issued, he waived any privilege un-
   der said sec. 4075, Stats.; and the physician should have been
   permitted to testify, in contradiction of the representation so
   made, that he had previously treated the applicant for a vene-
   real disease and not for la grippe.

6. Admissions of the assured, not part of the *res gestæ*, are not ad-

missible against the beneficiary to prove the falsity of statements in the application.

7. But admissions made by the beneficiary, showing knowledge on her part as to the health and condition of the assured at or prior to the making of the application for the insurance, are admissible against her to show the falsity of statements in such application.

8. The mere fact that a person was an officer of a subordinate lodge of a fraternal benefit society did not make him a stockholder or officer of the corporation itself within the meaning of sec. 4069, Stats., or preclude him from testifying as to conversations between himself and the beneficiary in a policy, so far as they tended to show admissions by her as to her knowledge of the health and condition of the assured at the time of his application for insurance.

9. "Presumptive evidence," in sec. 4160, Stats., means the same as *prima facie* evidence in sec. 1022—12.

10. A physician's certificate of death being a matter of public record, its contents are not to be treated as privileged; being but *prima facie* evidence of the facts stated therein, it is subject to contradiction by proof as to the real facts concerning the death; and the physician who made it may testify as to such facts.

11. In an action by a mother, as beneficiary, upon a policy of insurance on the life of her son who, in his application, had stated that his father never had had any cancerous disease, admissions by plaintiff showing her knowledge that the father had died of cancer were not mere hearsay and were admissible against her as tending to show a material misrepresentation in the application.

12. Correspondence between the examining physician and the insurer relative to the facts involved in alleged mispresentations in an application for insurance, was not admissible against the beneficiary.

13. An instruction to the jury to the effect that if a question "is left in doubt and uncertainty" the jury should answer it against the party upon whom the burden of proof rested, is criticised.

APPEAL from a judgment of the circuit court for Juneau county: JAMES O'NEILL, Circuit Judge. *Reversed.*

This action was brought by the plaintiff, beneficiary and mother of John McGinty, on a policy of life insurance issued by defendant.

John McGinty died February 25, 1913. His written application for this insurance, together with the report of an

examining physician, Dr. J. J. O'Neill, were made in September, 1911. The application contained a provision by which the assured warranted his answers to the questions therein contained to be true, full, and complete and the basis of the contract of insurance. Also that he had consulted Dr. J. J. O'Neill of Elroy, Wisconsin, his medical adviser, during the preceding five years for la grippe. That as to his father he stated in substance that he died at the age of fifty-six, having been six months sick, of previous good health, and that the cause of death was injury, and that the father never had had any cancerous or hereditary disease. That he himself had never been afflicted with syphilis or any disease of the genital or urinary organs.

By the provisions of the contract, the pleadings, and the evidence the following became the material issues between the parties and were submitted to the jury in a special verdict substantially as follows and with the answers made by the jury therein, viz.: (1) Was Michael McGinty, the father of the insured, afflicted with cancer? No. (2) Had the applicant ever been afflicted with syphilis at the time of making his application? No. (3) A similar question as to gonorrhea. No. (4) Was the applicant in good health at the time of making application? Yes. (5) Was the certificate procured by or through fraud or deceit of applicant? No.

After motions made by each side, judgment was ordered for plaintiff, from which judgment defendant appealed to this court.

For the appellant there was a brief by *Bentley, Kelley & Hill* of Baraboo, and oral argument by *Frank R. Bentley.*

For the respondent there was a brief by *J. T. Dithmar* of Elroy and *R. P. Clark* of Beaver Dam, and oral argument by *Mr. Dithmar.*

ESCHWEILER, J. At the beginning of the term of court and a week before the trial, when the action had been pend-

ing some nine months and had been once continued for a term, defendant moved for leave to amend the answer by inserting the following:

"That the application so made contained the following questions: 'Have you been afflicted with any of the following complaints and diseases: asthma, bronchitis, pneumonia, pleurisy, consumption, spitting of blood, habitual coughing, . . . or any disease of the throat, heart or lungs; cancer or tumor, scrofula, discharge from the ear, ulcers or open sores, chronic rheumatism, varicose veins?' and that to each of said questions the applicant answered 'No.'

" 'Have you ever had any illness or injury other than above stated?' Answer: 'No.' That said answers so made in the said application were false and known by the said applicant so to be, formed a material part of the said application and representation upon which the said benefit certificate was issued, and were falsely made by said applicant for the purpose of obtaining admission to the said order and receiving the said benefit certificate and relied upon by said defendant association in the issuance of said certificate."

The motion was renewed on the trial and each time denied by the court, of which rulings defendant now complains.

Such a denial was well within the discretion resting in the trial court and will not be disturbed. The application was late; it was too profuse, for it could hardly be expected that, after certain specific diseases had been relied upon as defenses, the door should be opened for a possible examination as to all ailments from asthma to varicose veins without at least some definite showing upon which particular item reliance would be placed. *French v. Fidelity & C. Co.* 135 Wis. 259, 115 N. W. 869.

The plaintiff beneficiary was called as an adverse witness by defendant and testified that her son John died from consumption after an illness of eight months; that she accompanied him to Dr. O'Neill's office in February, 1911, preceding his application for insurance, and heard the doctor say that John then had the grippe and sore throat; that she did

not then tell Dr. O'Neill that John had a bad disorder and that his privates were swollen and that she had applied poultices; that she never gave him treatments herself for any disease he had except for the grippe; that she took him to La Crosse in October, 1912, where he was operated upon, but that she did not know the nature of such operation; that she didn't know that he had contracted a disease from bad women; that she did not say to one Littlejohn, a member of a subordinate lodge of defendant who called on him in the last illness, anything about John's condition being due to his having led a fast life, or say anything of a similar nature to Miss Travanick, the nurse in attendance upon him.

She also testified with reference to her husband, John's father, that he died in September, 1910, from an injury received from being struck by a piece of wood in January, 1910; that Dr. Vogel treated her husband; that she saw herself that her husband had a pimple on his gum; that his face swelled thereafter; that they changed physicians and then had the same Dr. O'Neill; that the sore was opened, and she herself opened it with a match at times; that she did not tell Dr. O'Neill, who made out the death certificate, that she didn't want him to put in the certificate that the cause of her husband's death was cancer; and that the doctor said he would put in the statement as it appeared, viz. that the cause was "injury to the head;" that her husband told Dr. O'Neill that he, the husband, did not have cancer, and that she herself did not say to her husband, "it is cancer, and members of your [her husband's] family had died from cancer."

Mr. Littlejohn, called as a witness, was not permitted to testify as to whether the plaintiff made the statements to him which she had specifically denied making.

Miss Travanick, the nurse, was not permitted to testify as to whether plaintiff made to her the statements about her son's condition which she had denied making, on the ground

that statements of a beneficiary made shortly before death of insured are not admissible against her. She did testify that there had been an operation on John and both testicles removed; and that John died in convulsions.

Dr. O'Neill, called by defendant, testified in effect, and in contradiction of his own certificate attached to John's application for insurance, that he, the doctor, made no physical or urinal examination. It appeared that he treated John as a patient in 1911 until July, but that he was not such patient in September at the time of making the application. He was then asked if he had treated John for the grippe (referring to the statement in the application), but was not permitted to answer.

He was further asked as to whether plaintiff had made the statements to him about her son and her husband concerning which she had been asked and denied making, but was not permitted to testify on these points.

Two important questions were to be determined in this case. First, was deceased in good health at the time of making the application in September, 1911? and this depends largely upon the question as to whether or not at that time he had, or had had, syphilis or some kindred disease. Second, whether Michael McGinty, the father of insured, died of cancer.

The plaintiff offered in evidence the policy of insurance, together with the application for the same made by deceased, and the certificate of Dr. O'Neill, the medical examiner, as part of her case, over defendant's objection, and the same were received. At the opening of defendant's case defendant offered the same documents in evidence and they were again received. The plaintiff also, in rebuttal, offered in evidence the certificate of the death of Michael McGinty, the father, which had been made by the same Dr. O'Neill and filed with the register of deeds.

If either of the facts existed, as contended by defendant,

namely, that the father of deceased died from cancer, or that the deceased himself had syphilis at the time of making the application, then the warranties in the application were false and avoided the contract. *McKnelly v. American Yeomen,* 160 Wis. 514, 521, 152 N. W. 169. If made by the connivance of the medical examiner with the deceased, the defendant was clearly entitled to show such a situation. *Wilhelm v. Columbian Knights,* 149 Wis. 585, 136 N. W. 160. Even if the provisions of sec. 4202s, Stats., which makes any such report by the medical examiner binding on an insurance company, are applicable to a company like the defendant here (*McKnelly v. American Yeomen, supra*), still the situation would clearly come within the proviso of that section that there shall be no such estoppel if the report was procured by or through the fraud or deceit of the insured.

It is an uncontradicted fact that at the time of the making of this application the relationship of physician and patient no longer existed between Dr. O'Neill and the assured and the visit to the doctor at that time was not for the purpose of treatment. The privilege, therefore, of sec. 4075, Stats., making information obtained by a physician for the purpose of treating such person confidential, did not apply. *Smits v. State,* 145 Wis. 601, 604, 130 N. W. 525; *Cherpeski v. G. N. R. Co.* 128 Minn. 360, 150 N. W. 1091.

The insured having of his own volition obtained, at a time when he was not a patient, the statement of a physician who then had, as the patient was bound to know, knowledge as to his former health and condition, and then having joined with such physician in making material representations to the defendant and upon which the policy in suit was issued to him, must be held to have effectually waived any provision of the statute in question if the same were otherwise applicable. He is in effect requesting such physician to testify to such assertions, and can no more shut out legitimate and proper examination made to determine whether or not such particu-

lar assertions were true or not than if such physician were
called on his behalf as a witness and asked on direct exam-
ination the same questions. The defendant therefore should
have been permitted to have the doctor answer the questions
as to whether or not at the time he made the certificate at-
tached to the application the statements therein contained,
to the effect that the insured was in good health and had not
had any venereal disease, were false. That the knowledge
as to the existence of any such disease might have been ob-
tained when the relationship of physician and patient did
exist did not affect the situation at the time the insured ob-
tained the certificate of the physician, any more than if the
insured at such time first informed the medical examiner of
the existence of any disease so concealed by them both from
defendant.

The deceased having voluntarily published by his appli-
cation the fact that he had been to Dr. O'Neill for treatment
and that such treatment had been for the disease called la
grippe, this was a waiver of any privilege, and the doctor
should have been permitted, therefore, to answer questions
if the effect thereof would tend to negative the statement
that such treatment had been for la grippe. *Brown v. Metro-
politan L. Ins. Co.* 65 Mich. 306, 32 N. W. 610; *Briesen-
meister v. Supreme Lodge K. of P.* 81 Mich. 525, 45 N. W.
977.

The interest as designated beneficiary that the plaintiff
received in the policy in question was such as to make evi-
dence of any admissions of the insured, except such as could
properly be treated as *res gestœ,* inadmissible against her.
*Rawson v. Milwaukee Mut. L. Ins. Co.* 115 Wis. 641, 92
N. W. 378; *Johnson v. Fraternal R. Asso.* 136 Wis. 528,
117 N. W. 1019. But it manifestly follows, on the other
hand, that if such admissions made by the insured could not
be received to prejudice the rights of the plaintiff, any ad-
missions claimed to have been made by her as to such ma-

terial facts ought to have been admitted as against her when suing on the contract.

Admissions that she may have made indicating knowledge on her part of the existence of facts about her son's condition either at the time he was treated by Dr. O'Neill prior to the application or subsequent to the issuing of the policy, relating to his condition at or prior to the making of the application, were improperly rejected, and the trial court was in error in refusing to permit Dr. O'Neill to answer the questions put to him as to such alleged statements made by the plaintiff to him and concerning which she had been examined.

The same ruling will apply to the testimony sought to be obtained from the nurse, Miss Travanick.

The fact that Mr. Littlejohn, at the time of his conversations with the deceased and with the plaintiff, was an officer of one of the subordinate lodges of the defendant company, did not subject him to the objection interposed by plaintiff that he could not testify under sec. 4069, Stats., on the theory that he was a stockholder or officer of the defendant corporation and therefore made incompetent. He was not a stockholder of the defendant corporation, as there is no showing made of his holding or owning any such interest in the defendant corporation itself that might make him a stockholder. Neither was he, within the language of the statute, an officer of the defendant or having any control or direction of its management. He was therefore competent to testify as to any conversations between himself and the plaintiff so far as it tended to show any admissions made by her as to her knowledge of the health and condition of her son at the time of his application for insurance.

The certificate of death of the father, Michael McGinty, made by Dr. O'Neill, stated that the cause of death was an injury to the head. Such certificate is presumptive evidence of the cause of death under sec. 4160, Stats., and the term

"presumptive" as there used has the same significance as what is designated as *prima facie* evidence under sec. 1022— 12, Stats. Such certificate becomes a public record. Its contents are published to the world and are no longer treated as privileged. *State v. Pabst,* 139 Wis. 561, 592, 121 N. W. 351. It being but *prima facie* evidence of the material facts stated therein, it was subject to attack and subject to proof as to what were the real facts concerning the death. The doctor, therefore, who had made such certificate should have been permitted to testify, if such was the fact, that the injury to the head, referred to in the certificate as the cause of death, was a cancer.

If the plaintiff had at any time made statements that were in the nature of an admission of knowledge on her part that the cause of her husband's death was cancer, it was neither hearsay so far as the issues between the parties in this case are concerned, nor was it inadmissible for any other reasons. Testimony, therefore, should have been received, if offered, tending to show that she knew the fact to exist that her husband's death was on account of cancer, and which would tend to prove that there was therefore a material misrepresentation in the application by her son for the insurance policy upon which she now brings suit.

Correspondence passed between the witness Dr. O'Neill and the defendant company relating to facts which the defendant claimed existed and concerning which it cross-examined the plaintiff and sought to elicit from the testimony of the doctor and as indicated above. These letters were offered in evidence by the defendant. The court was clearly right in excluding them. They were declarations by the doctor to the insurance company and in no wise binding upon the plaintiff and could not be received as independent evidence of any fact.

The defendant took exception in the court below to certain language used by the court in its charge in the following

sentences: "The burden is upon the defendant to prove that Michael McGinty was afflicted with cancer by the preponderance or greater weight of the evidence. If the question is left in doubt or uncertainty, you should answer the question 'No.'" And again: "If the question is left in doubt and uncertainty and the affirmative is not proved by a preponderance of the evidence, the jury should answer the question 'No.'"

The use of the phrase in each of the portions of the charge quoted, to the effect that if the question is left in doubt or uncertainty the question should be answered against the one upon whom rested the burden of proof, to say the least, was an unfortunate addition to the charge, as it imports into what was otherwise sufficiently and properly defined as the burden of proof an element of doubt or uncertainty. Such an expression should not have been used in either portion of the charge, and while of itself it might not have been sufficient to have caused a reversal, it is better to be avoided on any retrial.

Numerous other assignments of error are made, but it is not deemed necessary to discuss them further. The errors pointed out are sufficient to require the granting of a new trial to the defendant.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.