MAINE, Appellant, vs. MARYLAND CASUALTY COMPANY and another, Respondents.

*June 4—September 25, 1920.*

*Witnesses: Form of objection to incompetency: Privilege in respect to testimony of physician: Waiver by patient: Implied waiver: Waiver by personal representative or beneficiary in insurance policy: Hearsay.*

1. Objections not expressly directed to the incompetency of physicians as witnesses, but rather to the incompetency of their testimony, will be considered on appeal where both court and counsel were apprised of the statute relied upon and it is clear that the questions were squarely presented to the trial court.
2. Sec. 4075, Stats., prohibiting a physician from testifying as to information acquired professionally from a patient, was enacted for the benefit of the patient, and the protection or privilege accorded the patient thereby may be waived by him; but it cannot be waived by administrators, executors, or personal representatives of the patient or by a beneficiary under his insurance policy.
3. In an action on an accident policy which involved the question whether the death of the insured was the result of an accident, the testimony of physicians who attended him is incompetent, under sec. 4075, the protection of such statute not having been impliedly waived by the insured on taking out the policy merely because of the possibility of the need of such testimony in an action on the policy following the death of the insured.
4. Declarations of the insured to his physicians, made some days subsequent to the accident, as to the cause of injury, are inadmissible, being hearsay and not a part of the *res gestæ*.
   OWEN and SIEBECKER, JJ., dissent.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

This action is to recover on a policy of accident insurance. The plaintiff is the widow and beneficiary under said policy of C. D. Maine, the insured, who it is claimed was injured on November 14, 1918, resulting in his death thirteen days later.

The decedent on the day in question moved a heavy icebox on a neighbor's premises. On the following day he gave an indication of pain in his side by frequently placing his hand there when standing up. Two days after the accident he lay down on a couch during the daytime, complaining of pain in the same place, which appeared to be over the gall duct on the right side of the abdomen. Shortly thereafter he was attended by physicians, and on November 21st was taken to the hospital and there operated upon.

The medical testimony shows that, prior to being sent to the hospital, the diagnosis of some of the physicians was that there was an infection of the gall bladder. The operation disclosed, however, that a part of the omentum, which is a part of the peritoneum or membrane lining of the abdominal cavity, had become gangrenous to an extent about the size of the palm of a hand. This portion was removed, but subsequently there developed a paralysis of the muscles in the walls of the intestines and a secondary operation was performed. The distention of the bowels caused by such paralysis increased and he died on November 27th as a result thereof.

The testimony indicated that such condition of the membrane was probably produced by a twisting as the result of some violent physical strain on or of the patient's body.

Under the testimony received by the court under its first ruling there was evidence that the deceased had at several times, but more than two days after the accident, stated to the attending physicians who were then treating him professionally that he had twisted himself at the time he was

moving the ice-box on November 14th and that he attributed the subsequent pain to such twisting.

The physicians further testified that considering what was disclosed at the operations and the autopsy, taken in connection with the statements that the deceased made to them as to the moving of the ice-box, they ascribed the cause of his death as being traceable to such injury.

A motion was made by the defendant to strike out the testimony of such physicians, which was granted, and thereupon the defendant moved for a directed verdict in its favor, which the court granted "solely upon the ground that the only evidence of the accident which is claimed was the proximate cause of the deceased's death is the statements of the physicians and surgeons who were called to treat him and to operate upon him, and the court being of the opinion that such testimony was incompetent because of the privilege, under sec. 4075 of our Statutes, that there is no evidence to sustain the claim of the plaintiff to the effect that there was an accident within the meaning of the terms of the policy."

The policy in suit contained the following:

"Affirmative proof of death, or loss of limb or sight, or duration of disability, must be furnished to the company within two months from the time of death, or loss of limb or sight, or termination of disability for which the company is liable.   No suit for recovery hereunder may be brought until after three months from the date of filing final proofs at the company's home office. . . ."

"14. The company shall have the right and opportunity to examine the person of the assured or beneficiary when and so often as it requires in case of injury and also the right and opportunity to make an autopsy in case of death."

From a judgment of dismissal of the complaint upon the merits plaintiff has appealed.

For the appellant there was a brief by *Winter, Morris, Esch & Holmes* of La Crosse, and oral argument by *Frank Winter*.

For the respondents there was a brief by *George H. Gordon, Law & Gordon* of La Crosse and *James E. Coleman* of Milwaukee, and oral argument by *George H. Gordon.*

The following opinion was filed June 23, 1920:

ESCHWEILER, J.    It is conceded in this case that there is no evidence in the record sufficient to support a verdict for the plaintiff upon the accident insurance policy in suit except and unless the testimony of physicians who attended the deceased subsequent to November 14th as to what was disclosed by the surgical operations performed by them, and including statements made by him to them concerning the alleged twisting or injury sustained in the moving of the ice-box, was erroneously stricken out.    The trial court excluded it under the following portion of sec. 4075, Stats.:

"No person duly authorized to practice physic or surgery shall be permitted to disclose any information which he may have acquired in attending any patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician or to do any act for him as a surgeon."

Appellant contends that the defendant should be prevented from asserting any right under such statutory provision, first, because of want of proper objection either to the competency of such physicians to testify as witnesses or to their testimony as it was being received; and secondly, because it must be considered that the exclusion of such testimony under said sec. 4075, being a privilege accorded the patient, was one that might be waived, and under the situation in this case was so waived.

We do not deem it necessary to recite in detail the manner and form in which the offered testimony on the points here in issue was objected to by the defendant from time to time as the same was being offered and was at first received. Objections were interposed as to the competency of the evidence on the ground of privilege, and also in a form in-

dicating that some of such objections were based upon the ground that the statements by the deceased as to the alleged accident on November 14th, made some considerable time thereafter, were not parts of the *res gestæ*.    That the objections were intended to be to the incompetency of the witnesses to testify rather than to the incompetency of their testimony, was perhaps not so precisely or concretely stated during the earlier stages of the trial as might have been advisable, but it is rendered immaterial in the disposition of this case for the reason that court and counsel were apprised that reliance was being expressly placed by defendant upon the section of the statute above quoted.

Upon subsequent motions made by defendant and the action of the trial court, it is clear that the questions now considered were squarely presented to the trial court, so that the first objection raised by appellant on this appeal as to the form of defendant's objections to this testimony must be overruled.

Although sec. 4075, Stats., *supra,* makes no exception in terms as to the application of the peremptory language of the statute excluding the testimony of physicians or surgeons as to information received by them professionally from a patient, yet it is also well established that such statutory provision, being intended as a protection to the patient rather than a mere inhibition to the physician, is a protection or privilege that may be waived by him for whose benefit it is deemed to have been enacted, and therefore such testimony may, notwithstanding the statute, be admitted, it satisfactorily appearing that the patient's privilege has been waived. *McGinty v. Brotherhood of Railway Trainmen,* 166 Wis. 83, 89, 164 N. W. 249; *Will of Hunt,* 122 Wis. 460, 469, 100 N. W. 874.

There was no express waiver by the patient in this instance, and it cannot be waived by the administrators, executors, or personal representatives of the deceased nor by any person standing in the position towards deceased such as

does the plaintiff beneficiary under the policy in suit.  *Casson v. Schoenfeld,* 166 Wis. 401, 413, 166 N. W. 23.

It is urged, however, and largely from the standpoint of the probable injustice that will otherwise result in this instance as well as in similar situations, that under the facts in this case it was intended by the insured that there should be a waiver of such privilege from his taking out such an accident policy, in that the very nature of the contract necessarily implies that it was anticipated that in case of accident the testimony of attending physicians or surgeons would be required in order to establish a right to recover either for the insured himself in case of an injury not resulting in his death, or for the designated beneficiary in case such injury resulted in death.

It is further urged that the contract of insurance, providing as it does on its face for the furnishing by the insured or his beneficiary, respectively, of satisfactory proofs of injury or death, also indicates an intention on the part of the insured that the statutory exclusion of such material testimony as was being offered in this case was to be lifted and waived by the insured.  Plaintiff also insists that in view of the conditions inserted for defendant's benefit in this contract, namely, those requiring statutory proofs of death, necessarily requiring the statement or evidence of physicians, and the further provision for the examination of the body of the insured under the clauses set forth in the statement of facts above, should prevent it from now asserting any benefits from a privilege belonging to the insured and not to the defendant or the witnesses themselves.

That such a statute as well as others that the state has adopted, on the ground of public policy, for the exclusion of testimony involving information acquired in such confidential relationships as that between physician and patient, lawyer and client, minister and penitent, undoubtedly does in particular instances result in the defeat of meritorious and just claims, may well make us hesitate but cannot per-

mit us to do otherwise than uphold the law as it has been written. It must not be overlooked that such a privilege is somewhat of a double-edged sword, in that such patient could not waive his 'privilege so as to have admitted testimony elicited from a physician that was favorable to the patient's side of any controversy and at the same time insist upon the statute for the exclusion of further testimony on cross-examination or otherwise which might prove harmful to his cause. If the bars are lowered for and by him, they must be kept lowered for the opposite party.

Were such statute only for the benefit of parties situated towards the patient as is the defendant in this case, then there would be much force to the argument that such contract provisions should be held to be a waiver by it of such privilege. The possibility, however, of need of such testimony on any action on such an insurance policy does not justify, in our judgment, a conclusion that the patient himself, in the making of such a contract, thereby impliedly writes into it a waiver on his part of such statutory privilege, which privilege, if thus waived by him, would necessarily be waived as against him if alive, or against his memory or reputation if dead.

The trial court was therefore right in ruling as he did that the information obtained by the medical witnesses while attending, prescribing for, and operating upon the patient was excluded and not permitted to be received in evidence by force of sec. 4075, *supra*.

Much of the apparent hardship resulting in this case from a dismissal of plaintiff's cause of action, however, necessarily results from the application of another well established rule of evidence not dependent upon the statute.

The testimony of the physicians so excluded in this case on all the other points on which it was offered would have been of no avail and weight unless there could have been connected with such testimony the declarations of the deceased, made some days subsequent to the accident to these same physicians, that he did injure himself by the moving

of the ice-box.   Such declarations were clearly no part of
the *res gestæ,* were hearsay and inadmissible.   *Hall v.
American M. A. Asso.* 86 Wis. 518, 525, 57 N. W. 366;
*Brahmsteadt v. Mystic Workers of the World,* 152 Wis.
580, 582, 140 N. W. 354; *Andrews v. U. S. C. Co.* 154 Wis.
82, 87, 142 N. W. 487; *Ætna L. Ins. Co. .v. Ryan,* 255 Fed.
483; *Globe Acc. Ins. Co.`v. Gerisch,* 163 Ill. 625, 627, 45
N. E. 563; *Budde v. Nat. Trav. Ben. Asso.* 184 Iowa, 1219,
169 N. W. 766; Jones, Ev. (2d ed.) § 345; 1 Corp. Jur.
500.

Recitals of past events made by an interested person are
no more admissible because made to physicians or surgeons,
even when necessarily so made for the purpose of proper
treatment by them, than if made to other persons.   *Keller
v. Gilman,* 93 Wis. 9, 11, 66 N. W. 800; *Kath v. Wis. Cent.
R. Co.* 121 Wis. 503, 511, 99 N. W. 217; *Peoria C. Co. v.
Industrial Board,* 284 Ill. 90, 93, 119 N. E. 996; *Maryland
C. Co. v. McCallum,* 200 Ala. 154, 75 South. 902; 1 Corp.
Jur. 500.

*By the Court.*—Judgment affirmed.


The following opinion was filed July 15, 1920:


OWEN, J. (*dissenting*).   The result of this litigation
should cause the legislative mind most serious reflection.
A husband, with most commendable prudence and foresight,
purchased an accident insurance policy which provided for
the payment of $5,000 to his widow in case of death result-
ing from bodily injuries.   Death occurred by reason of
bodily injuries, and she seeks to recover on the insurance
policy.   In order to establish the causal relation between
the bodily injuries and the death, the testimony of his at-
tending physician is essential.   That testimony is declared
incompetent and is not received by reason of the provisions
of sec. 4075, Stats., which provides:

"No person duly authorized to practice physic or surgery
shall be permitted to disclose any information which he may

have acquired in attending any patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician or to do any act for him as a surgeon."

It is suggested that the legislature can, with much profit, in a consideration of the wisdom of this enactment, balance equivalents with a view of determining whether this statute is promotive or destructive of justice.

The rule did not obtain at common law. It had its origin in the state of New York, and has been adopted by approximately one half of the states of this country. It is said that it was enacted for the purpose of encouraging patients to disclose fully their ailments to their attending physicians without apprehension that their statements so made could be disclosed upon the witness stand to their humiliation and disgrace. As compared with the innumerable ailments to which human flesh is heir, those which bring shame or disgrace to the sufferer are inconsiderable. Of those so afflicted who consult physicians but an inconsequential proportion are restrained from complete disclosure by apprehension of enforced publicity of shameful secrets. When we realize that but an insignificant segment of society requires protection of this nature, well may we wonder whether the shield designed for their benefit should be made so broad and ample as to constitute an insuperable barrier to the attainment of justice by the heirs and representatives of those who do not need such protection.

Ordinarily bodily affliction and disease are attended with neither shame nor disgrace. The character of one's ailment is not usually a secret. It is generally known to one's neighbors, friends, and acquaintances. In all the range of human affliction one can think of but one class of diseases that he would hide from his friends and neighbors, and that is venereal diseases. No other diseases, nor class of diseases, bring humiliation or shame or disgrace to the

sufferer. He who has acquired venereal disease by clan-
destine liaison has scant claim upon legislative consideration
for protection from the shame which he has deliberately
invited. In the last analysis, therefore, this statute must
be said to have been enacted to save from shame and dis-
grace those who by their own acts have forfeited their
honor. If this could be done without at the same time
working injustice to the innocent and the pure, the purpose
might be generous and praiseworthy. But where the inno-
cent are made to suffer to shield the wicked and the guilty
from the publicity of their own misconduct, the cost of
generous consideration becomes too great. Taking society
as a whole, this statute cheats rather than promotes justice.
It suppresses rather than reveals truth. This case furnishes
a splendid illustration of its consequences. Here a poor
widow is turned out of court, unable to recover on a con-
tract made by her deceased husband for her benefit, because
this statute closes the mouth of his attending physician.
The same result must follow in any case for the recovery
of damages for death caused by wrongful act, where the
testimony of the attending physician is necessary to estab-
lish the causal relation between the injury and the death.
The innocent should not be thus deprived of justice and
made to pay the cost of the protection which this statute
would afford to those who have forfeited all right to
protection.

The centuries of experience during which the common
law was developed did not give rise to this rule. As already
stated, it had its origin in a statutory enactment of the state
of New York, and not more than half of the jurisdictions
of this country have been impressed with the wisdom or
justice of the rule thus created. Well may this statute re-
ceive legislative reconsideration, and if it still be thought
desirable to afford protection to those who have but scant
claim upon the consideration of society, then let it be so

framed that such protection can be extended without work-ing hardship and injustice to the innocent and the pure. While a statute so sweeping and unambiguous in its terms is difficult of administration by the courts so that injustice will not result, or of confinement to the accomplishment of the purposes for which all know it was designed, yet, nevertheless, courts have somewhat ameliorated its harsh results by the application of well-founded legal principles. It has been held that the statute confers a privilege upon the patient, and that he may release the seal placed upon the mouth of the physician by waiving the privilege. In order that harsh results might not follow, it has been held in many jurisdictions that the privilege could be waived by an heir or personal representative of the patient after he is dead. 4 Wigmore, Ev. § 2391 and cases cited, to which may be added *Olson v. Court of Honor,* 100 Minn. 317, 110 N. W. 374. This court, however, is firmly committed to the proposition that the privilege may be waived by no one except the patient himself, and that the power does not pass to his heirs or personal representatives. *Will of Hunt,* 122 Wis. 460, 100 N. W. 874; *Will of Bruendl,* 102 Wis. 45, 78 N. W. 169; *Casson v. Schoenfeld,* 166 Wis. 401, 166 N. W. 23. But it is also firmly established that the privilege may be waived by acts other than those amounting to an express waiver in open court. *McGinty v. Brotherhood of Railway Trainmen,* 166 Wis. 83, 164 N. W. 249. It is also well established that where a testator calls upon his attorney to witness his will he thereby releases the seal placed upon the lips of his attorney by force of the similar rule making confidential communications made by the client to his attorney, and the attorney becomes a competent witness to the execution of the will and to the competency of the testator to make a will. *McMaster v. Scriven,* 85 Wis. 162, 55 N. W. 149; *Will of Coleman,* 111 N. Y. 220, 19 N. E. 71; *Alberti v. N. Y., L. E. & W. R. Co.* 118 N. Y. 77, 85, 23 N. E. 35. These cases recognize the principle that,

although dead, the deceased may leave behind him evidence which indicates an express intention on his part to waive the privilege. In *Will of Coleman, supra,* it is said:

"It would be contrary to settled rules of law to ascribe to the testator an intention, while making his will and going through the forms required to make it a valid instrument, to leave in operation the provisions of a statute which he had power to waive, but which, if not waived, might frustrate and defeat the whole object of his action."

Just as these considerations have prompted courts to hold that, where a testator requested his attorney to witness his will, he thereby waived the privilege of secrecy attaching to his communications, so here it should be held, in my opinion, that the deceased, in applying for, taking out, and paying premiums upon this insurance policy, waived the privilege of secrecy which the statute imposes upon his attending physician.

It is matter of common knowledge that in order to recover upon a policy of this kind it must be proved that death was the result of an injury, and that in the vast majority of cases this causal relation can be proved only by the attending physician. It is to be presumed that when insured made application for the insurance policy and paid the premiums thereon as they became due he did it with the intention that his beneficiary would be able to secure the benefits provided by the terms of the policy. With that plain proposition every one will agree. Now to ascribe to him an intention to leave the provisions of this statute in force, thereby destroying the only evidence upon which his beneficiary may rely to establish liability under the policy which he has bought and paid for, is to make his transaction a most silly and foolish one. To my mind the waiver of the statute follows as logically in this case as it does when a testator calls upon his attorney to witness his will, and just as logically as it did in the *McGinty Case,* 166 Wis. 83, 164 N. W. 249. People pay for death-benefit provisions in in-

surance policies for but one purpose, *i. e.* so that their bene-
ficiaries may recover thereon in case of death, and it is not
their intention that such provisions shall be rendered nuga-
tory, and their premium payments donations to the insur-
ance companies, by withholding from the beneficiaries the
only evidence upon which they may rely to collect upon the
insurance policy when the insured has it within his power to
release it.

I maintain, therefore, that by the very act of applying
and paying for an insurance policy of this nature the insured
thereby waives the privilege of the statute just as effectually
as does the testator who calls upon his attorney to witness
his will.

I agree that the statements made by the deceased to his
physician concerning the nature of the bodily injuries can-
not be received for the purpose of proving the fact of the
accident.    But in this case there was ample evidence from
which the bodily injuries might be inferred without reliance
upon statements made to the physician by the deceased.

For these reasons, therefore, I think the judgment should
be reversed, and the cause remanded for a new trial.

I am authorized to state that Mr. Justice SIEBECKER con-
curs in the foregoing dissenting opinion.

A motion for a rehearing was denied, with $25 costs, on
September 25, 1920.