CRETNEY, Respondent, vs. WOODMEN ACCIDENT COMPANY, Appellant.

*April 5—May 8, 1928.*

For the appellant there were briefs by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Ralph W. Jackman.*

For the respondent there was a brief by *James E. O'Neil* of Dodgeville and *T. M. Priestley* of Madison, and oral argument by *Mr. Priestley.*

ROSENBERRY, J. Two principal questions are raised by the record in this case: First, Is the finding of the jury that the deceased came to his death from an injury effected through violent, external, and accidental means, entirely in-

dependent of all other causes, sustained by the evidence? Second, Was the testimony of Dr. Cooksey properly received in the case?

The defendant contends that the law may be stated as follows: (1st) When an accident causes a diseased condition, which together with the accident results in injury or death complained of, the accident alone is to be considered as the cause of the injury or death, citing *French v. Fidelity & Cas. Co.* 135 Wis. 259, 115 N. W. 869. (2d) When at the time of the accident the insured was suffering from some disease but the disease had no causal connection with the injury or death resulting from the accident, the accident is to be considered the sole cause, citing *Bohaker v. Travelers' Ins. Co.* 215 Mass. 32, 102 N. E. 342; *Leland v. Order of U. C. T.* 233 Mass. 558, 124 N. E. 517. (3d) When at the time of the accident there was an existing disease, which, co-operating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes, citing *Cary v. Preferred Acc. Ins. Co.* 127 Wis. 67, 106 N. W. 1055.

The trial court was of the opinion that this case fell within the first class. The defendant contends that it falls within the third class. Stating the facts most strongly in favor of the plaintiff, the following situation was presented: the deceased was suffering from a cancerous growth in the region of his stomach, which was at the time in an advanced stage, but which up to the day of the accident had given him no trouble and which was unknown to him. He had remained in full physical vigor, as is indicated by the character of the work in which he was engaged. He died from a hemorrhage due to a ruptured blood vessel in the cancerous mass. He would have died eventually of the cancer had there been no rupture. The evidence is silent as to whether or not the rupture of a blood vessel in a cancerous mass of this kind is a usual, ordinary, or expected termination.

The general rules of law governing this situation seem to be well established. See note in 34 L. R. A. N. s. 435; also note in 52 L. R. A. N. s. 1203; 14 Ruling Case Law, 1246; *White v. Standard Life & Acc. Ins. Co.* 95 Minn. 77, 103 N. W. 735; *Husbands v. Indiana Trav. Acc. Asso.* 194 Ind. 586, 133 N. E. 130, 35 A. L. R. 1184 and note.

The rule is stated thus in 14 Ruling Case Law, 1246:

"It is also the general rule that if the insured, at the time of the alleged accidental injury, was also suffering from a disease, and the accident aggravated the disease, or the disease aggravated the effects of the accident, and actively contributed to the disability or death occasioned thereby, there can be no recovery upon the policy."

In this case we are entirely dependent upon the medical testimony as to the cause of death. Until an attempted operation a few hours before his death disclosed the condition, neither deceased nor any one else knew that he was suffering from cancer. Dr. Reese testified in substance as follows:

"When I examined Mr. Cretney, I found a slight raise in the skin above the appendix region. At that time I diagnosed it as a tumor deep in the abdomen and advised Mr. Cretney's removal to the hospital. His fever was also rising and his pulse getting faster. It looked like a bleeding ulcer to me. Dr. Cooksey removed one large growth from the abdomen, but I don't know whether he removed other smaller growths. There were several smaller growths there. He did not remove the large growth in the stomach, as he determined that if he cut it out it would have been necessary to remove about two thirds of the man's stomach. It could not possibly have occurred between December 27th and December 29th. It must have been there at least six or eight months. Mr. Cretney's death was caused by bleeding of this growth. It was a contributing cause to Mr. Cretney's death."

In the death certificate Dr. Reese stated: "Operated December 29, 1926. Found a bleeding sore in the stomach, supposed to be malignant." Dr. Cooksey did not testify but

prepared a statement, and by stipulation it was admitted in evidence as being what he would testify if present as a witness, and the statement was so received. He said:

"I operated upon Cretney and found a ball resembling a growth in the stomach about three inches in diameter. It had the appearance of a cancerous growth in its last stages. I did not cut the growth out because it had gone so far that it would have been necessary to take out two thirds of the man's stomach.

"There is no question but what the growth caused Mr. Cretney's death and that the death cannot be attributable to any accident."

Except for some collateral statements this is the testimony as to the cause of death.

It is considered that under the authority of the cases cited it must be held that death in this case was not due to violent, external, and accidental means entirely independent of all other causes. While the doctors did not testify that rupture of a blood vessel was ordinarily to be expected under the circumstances disclosed, they had the situation before them and in the light of their expert knowledge testified that the cancerous condition was at least a contributing cause of death. This leaves no room for a jury finding that the cancerous condition was not a contributing cause of death within the meaning of the policy and death could not therefore have been due to an accident entirely independent of all other causes.

It is fully realized that there may be cases which are to be distinguished from this case although apparently similar. The holding here does not mean that a man must be in perfect physical health in order that there may be a recovery on an accident policy such as the one in suit here. A man insured may be in advanced years, he may be suffering from some disease which has weakened his resistance, yet he may be the victim of an accident which is the sole cause of his death, although death might have been less likely had he been

in a better physical condition; but this case is not such a case. Here the disease itself, according to the testimony of the physicians, was a cause of death, at least concurring with the accident to produce the result, and in the opinion of one physician the sole cause of death.

In 1920 the law relating to a privileged communication made to a physician provided:

"No person duly authorized to practice physics or surgery shall be permitted to disclose any information which he may have acquired in attending any patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician or to do any act for him as a surgeon." Sec. 4075, Stats. 1919.

Under the statute as it then stood, it was held in *Maine v. Maryland Cas. Co.* 172 Wis. 350, 178 N. W. 749, that no one but the patient could waive the privilege. In that case a beneficiary under a policy of insurance attempted to make a waiver. In 1921 the statute was again amended. In 1927 the section was entirely rewritten as follows:

"Sec. 325.21. No physician or surgeon shall be permitted to disclose any information he may have acquired in attending any patient in a professional character, necessary to enable him professionally to serve such patient except only (1) in trials for homicide when the disclosure relates directly to the fact or immediate circumstances of the homicide, (2) in all lunacy inquiries, (3) in actions, civil or criminal, against the physician for malpractice, (4) with the express consent of the patient, or in case of his death or disability, of his personal representative or other person authorized to sue for personal injury or of the beneficiary of an insurance policy on his life, health, or physical condition."

Two physicians were called to attend the deceased in his last illness. It was sought to waive the privilege as to Dr. Reese and to maintain the privilege as to Dr. Cooksey. The question now raised relates to the extent of the waiver. Considering the purpose of the statute, which was to enable a person in need of medical or surgical attendance to confide

to his physician or surgeon such facts as were necessary to enable him to receive proper attention without running the risk of disclosure by the one to whom the communications were made, it is held that the statute creates a privilege which when once waived opens up the entire situation. It would be most unjust and unfair to permit patients or their heirs to waive the privilege as to testimony of a physician who was favorable to their interest and claim the benefit of the privilege as to a physician similarly situated who might not be favorable to their interest. When consent is given for the disclosure by one physician the reason for the statute no longer exists, and the waiver is a waiver of the whole privilege and not a consent to the introduction of the testimony of designated witnesses. *Maine v. Maryland Cas. Co.* 172 Wis. 350, 178 N. W. 749. See 5 Wigmore, Evidence (2d ed.) p. 226, § 2391, and cases cited. The trial court correctly held Dr. Cooksey's testimony admissible.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to dismiss the complaint.