252

SCHWARTZ, Respondent, vs. WOODMEN ACCIDENT COMPANY, Appellant.

*February 4—March 5, 1929.*

For the appellant there was a brief by *Lines, Spooner & Quarles* of Milwaukee and *Duffy & Duffy* of Fond du Lac, and oral argument by *James T. Guy* of Milwaukee and *F. Ryan Duffy.*

For the respondent there was a brief by *Martin & Kelley* of Fond du Lac, and oral argument by *J. L. Kelley.*

Owen, J. On the 15th day of June, 1927, Dr. Dana was called to treat an injury on the forearm of Henry Schwartz, and he was permitted to testify that Schwartz told him that while cranking a car the crank struck him on the left forearm. Dr. Gavin, who was later called in consultation, was also permitted to testify that Schwartz made a similar statement to him. It is contended that this testimony was inadmissible for the purpose of proving that Schwartz received an injury through accidental means. In *Maine v. Maryland Cas. Co.* 172 Wis. 350, 357, 178 N. W. 749, it was said: "Recitals of past events made by an interested person are no more admissible because made to physicians or surgeons, even when necessarily so made for the purpose of proper treatment by them, than if made to other persons." It is plain that the statements made by Schwartz to his physicians, so far as they tend to establish an injury to his arm through external or accidental means, were pure hearsay and should not have been received for that purpose. There was, however, abundant competent evidence to establish that fact, so that the error cannot be regarded as prejudicial.

The witness Sonn and the witness Binney testified that they and Schwartz worked at the warehouse of the Wadhams Oil Company; that Schwartz drove a two-and-one-half ton Sterling truck which was cranked by hand; that sometime during the day of June 15th Schwartz exhibited to them his left forearm, which appeared to be red and inflamed. He put his left arm on the desk, was holding it with his right hand, and appeared to be hurt. Mrs. Schwartz testified: his arm was red and bruised between the wrist and the elbow, and that Dr. Dana was consulted with reference to the arm that night. This testimony justifies an inference that Schwartz received an injury upon the arm during the day of June 15th.

The principal issue litigated is whether the evidence sustains the finding of the jury that the death of Schwartz was

caused by said injury entirely independent of all other causes. It is claimed by the appellant that at the time of the accident Schwartz was afflicted with a lympho sarcoma which rather than the accident was the cause of his death. If such be the case the plaintiff is not entitled to recover. *Cretney v. Woodmen Accident Co.* 196 Wis. 29, 219 N. W. 448.

The evidence shows that Schwartz was thirty-four years of age and that at and before the time of the accident he appeared to be a man of good health and vigor. When first examined by Dr. Dana he found a swelling and slight discoloration of the forearm. He could tell that it was obtained from a traumatism or injury. Schwartz continued to work for three or four days with a helper. Dr. Dana did not think much of the injury at the time, but the man became weaker. This was about the fourth or fifth day. After a while the swelling of the epitrochlear glands, which are right along the arm, developed. The swelling continued to increase. A few days later the axilla glands under the arm became swollen. On the 28th he had a very severe axilla hemorrhage. He was taken to the hospital, where the hemorrhage continued until his death on July 2d. The axilla hemorrhage was only partially controllable. They made an incision in the arm with the thought of localizing some of the pus. They did not get any pus, but got a very uncontrollable hemorrhage from the arm, which condition also prevailed up to the time of his death. They made a transfusion of blood through the right arm. There was no bleeding from the wound into which the tube was inserted. Dr. Dana made examinations to discover whether any other glands were involved. There were no involvements of the glands in the groin, of the axilla gland on the other arm, of the glands in the neck or in the chest, nor were there any involvements of the spleen that could be determined. There was also a nasal hemorrhage which could not be checked.

Specimens were taken from the arm of deceased and submitted to three recognized pathologists, Dr. Edward L. Miloslavich, Dr. W. D. Stovall, and Dr. Edward F. Tharinger. Dr. Miloslavich and Dr. Stovall declared the specimens examined were those of a lympho sarcoma. Dr. Tharinger declared them to be those of a round-cell sarcoma. He said he was not certain that it was a lympho sarcoma, but it was certainly a small round-cell sarcoma. Doctors Miloslavich and Stovall testified that in their opinion death was due to the presence of this sarcoma and that it did not result from the injury. They expressed the opinion that lympho sarcoma must have been present at the time of the injury, because a lympho sarcoma could not develop so as to cause death within a period of fifteen days. It is appellant's contention that the testimony of Doctors Miloslavich and Stovall conclusively establishes as a scientific proposition that death was due to the sarcoma and not to the injury. On the other hand, Dr. Dana, Dr. Gavin, and Dr. Tharinger all testified that in their opinion the cause of death was due to the injury.

It is attempted to read the testimony of Doctors Dana and Gavin out of the case because they are not pathologists, and it is said that the only experts really qualified to testify in the case are pathologists. A knowledge of pathology enabled these pathologists to examine the specimen and determine its character. Doctors Gavin and Dana did not pretend to be able to determine the character of the specimen. However, they were familiar with the disease known as lympho sarcoma, its character, growth, and development, at least in a general way. The pathologists were no doubt their superiors when it came to a matter of diagnosis, but it by no means follows that the testimony of the doctors is to be laid out of the case when it is assumed that sarcoma of some classification, whether it be lympho or round-cell sarcoma,

was present in the arm of Schwartz. Conceding the presence of sarcoma, they were qualified to testify whether in their opinion death was the result of sarcoma or of the accident.

It is generally conceded by all that if the sarcoma was present at the time of the accident, in order to cause death within fifteen days it had a speedy and most unusual progress. This is an outstanding circumstance upon which the appellant strongly relies. However, there is another consideration which is just as strange and unusual, and that is the state of the health of Schwartz at the time of the accident. If he had lympho sarcoma of such a stage of development that death resulted within two weeks or fifteen days thereafter, it is a most unusual circumstance that the general appearance and health of Schwartz showed no indications of it. Thus Dr. Tharinger testified: "There is usually a disturbance of the blood so that the individual has a pale—sort of ashen color, and he looks weak and sick, and he feels that way also as the result of his systemic blood involvement." Dr. Stovall, testifying upon this point, said: "I think he might be in full control of himself, fully able to do manual labor to the full extent, and to engage in social intercourse with his fellow man in his usual and customary way and be perfectly cheerful. I have seen it. It isn't very usual for that to happen, certainly, but I have seen such cases."

Any way we look at it, we have an unusual case. It is not usual for a lympho sarcoma to originate and progress so far as to cause death within two weeks. On the other hand, if sarcoma is present in the system, and has progressed to such a point that death follows within two weeks, it is most unusual if the subject does not give some evidence of the affliction. The testimony of one class of experts gives rise to an unusual situation in one respect, while the testimony of the others gives rise to just as unusual a situation in another respect.

There is another consideration which we think is of some importance. Lympho sarcoma originates in the glands of the body. Its course is generally marked by progress from one gland to another in a chain of glands, although it is said that it sometimes jumps from one chain of glands to another. If the sarcoma originates in the center of the body its progress is outward towards the outer portion of the body, proceeding from one gland to another. If it originates in the anterior portions of the body, its progress then is towards the center of the body, proceeding from one gland to another in a chain. This tumor was found in the most remote gland of the arm. Its progress must necessarily have been inward, towards the center of the body. The nearest gland to the one affected, the axilla gland under the arm, did seem to be involved. But such was not the case with the glands of the neck, or any other gland, so far as discovered: from which it would appear that the sarcoma had not existed for a sufficient length of time to make any great progress from one gland to another.

..Whether a lympho sarcoma may result from trauma is somewhat uncertain. Dr. Stovall testified: "Science is not aware, nor can scientific men who have made a study of this disease in pathology say, what is the cause of lympho sarcoma;" and Dr. Miloslavich merely testified that he believed "that the blow did not have anything to do with the development of the lympho sarcoma, as the time of development is too short." He did not testify that a trauma might not give rise to a lympho sarcoma. Dr. Tharinger testified:

"Ordinarily we aren't able to say what causes this type of tumor, or for that matter practically all types of tumor; the exact cause is not known. It is only in certain types of individuals that tumors do follow injury. The entire medical profession is agreed, at least so far as I have been able to find out, that under certain circumstances, granting a single cause is not known, under certain circumstances tumors result at the site of injury—and following the injury, so that they agree that the injury has some influence,

at least, and perhaps if the injury had not occurred the tumor perhaps would not be there, but they all realize even in such case there is some other factor or underlying tendency there, that the person is probably susceptible to that condition; may be it is a process already there which is lit up." "I never in my experience saw a case of lympho sarcoma that developed from an injury."

He also testified that he thought a lympho sarcoma may result from trauma, because other closely related types of tumors are very similar to a lympho sarcoma and frequently they start from trauma.

So we have a situation where it may be said that science, to say the least, is not well settled upon the cause of lympho sarcoma. It has not definitely excluded trauma as a cause. Other types of tumors similar to lympho sarcoma frequently start from trauma. Taking a bird's-eye view of the case, we see a strong, healthy man, in the prime of life, in the performance of his daily work, carried on in his erstwhile and customary fashion, who sustained a blow on the arm, developing a tumor which causes his death within less than three weeks after the accident. If the tumor had existed prior to the injury, it would be most unusual for him to be in his conceded state of health and vigor. If the tumor resulted from the accident, its progress was most unusual. Whether the tumor resulted from the trauma, science is undetermined. Three experts testified that in their opinion the tumor developed after the injury and that the injury was the proximate cause of death. Two other experts testified that in their opinion the accident had nothing to do with the death. While the evidence is not convincing, it is but an infirmity more or less inherent in expert testimony. We hold that the evidence afforded a substantial basis for the verdict of the jury.

*By the Court.*—Judgment affirmed.