STATE of Wisconsin, Plaintiff-Respondent,†

v.

Robert M. SPEESE, Defendant-Appellant.

Court of Appeals

*No. 93–0443–CR. Submitted on briefs February 2, 1994.—Decided January 19, 1995.*

(Also reported in 528 N.W.2d 63.)

†Petition to review granted.

For the defendant-appellant the cause was submitted on the brief of *Kenneth L. Lund*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Jerome S. Schmidt*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J.   Robert Speese appeals from a judgment convicting him of multiple counts of first- and second-degree sexual assault of a child, second- and fourth-degree sexual assault, physical abuse of a child[1] and exposing a child to harmful material, §§ 940.225(1)(d), 1985-86, 948.02(2), 940.225(2)(a) and (3m), 948.03(2)(b), and 948.11(2)(a), STATS. The counts total twenty-two[2] and involve two girls, Speese's stepdaughter Teresa and her friend Kari. We affirm in part and reverse in part.

The issues are (1) whether the evidence on three counts of second-degree sexual assault of Teresa was sufficient for the jury to find that Speese threatened to use force or violence, (2) whether rulings preventing defense counsel from reviewing Kari's medical records denied Speese his right to present a defense, (3) whether the absence of a special unanimity instruction to the jury denied Speese his right to due process and a

---

[1] Because Speese physically abused his stepdaughter while he was responsible for her welfare, he received a penalty enhancement, under § 948.03(5), STATS., on one count of physical abuse.

[2] A twenty-third count, count nine was dismissed.

unanimous jury verdict, and (4) whether we should order a new trial in the interest of justice.

We conclude that the evidence on the three counts is sufficient. We conclude a remand is necessary to determine whether Kari voluntarily consented to disclosure of her psychiatric records. If she did, then a new trial is necessary on the sexual-assault charges involving Kari because Speese's lack of access to those records was not harmless error. If she did not consent, we conclude that the trial court should have required Kari either to consent to Speese's inspection of her psychiatric records or not testify. A new trial is therefore necessary on the sexual-assault charges involving Kari. We do not reach the instruction issue, and we deny the request for a new trial on all counts in the interests of justice.

## I. SUFFICIENCY OF EVIDENCE TO SHOW THAT SPEESE THREATENED TO USE FORCE OR VIOLENCE

Counts five, six and seven charged Speese with second-degree sexual assault, § 940.225(2)(a), STATS., of Teresa. That statute provides that a person is guilty of a Class C felony if he or she "[h]as sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence." The offense "has a sexual activity component, a consent component, and a force component." *State v. Baldwin*, 101 Wis. 2d 441, 449, 304 N.W.2d 742, 747 (1981). Speese contends the evidence is insufficient to support a finding that the State proved the force component, the "use or threat of force or violence," beyond a reasonable doubt.

211

Our review is limited to determining whether the evidence, considered most favorably to the conviction, is so insufficient in probative value and force that no trier of fact acting reasonably could be convinced beyond a reasonable doubt that the elements of the charged crime have been proven. *State v. Koller*, 87 Wis. 2d 253, 266, 274 N.W.2d 651, 658 (1979).

Counts five, six and seven stem from sexual intercourse and sexual contact Speese allegedly had with Teresa on September 18 and 21, 1991, when Teresa was sixteen years old. She testified that Speese had first touched her breasts, buttocks and vagina when she was six years old, he had masturbated in her presence, and when she was eleven or twelve years old he started having sexual intercourse with her. She testified that beginning in the summer of 1987, he demanded sexual intercourse with her at least twice a week, that he beat her often and that on two occasions he beat her because she did not have sex with him.

Teresa testified that when the three charged assaults occurred in September 1991, Speese did not use or threaten force or violence but that she did not consent. When asked why she nevertheless had intercourse with him, she testified, "Fear. I was afraid. I was deathly afraid." She testified that on one specific occasion in September, "I was afraid. I was afraid that he would hit me again. I was also afraid that if I turned him down again that he would hit me."

To support Teresa's testimony that she submitted to Speese out of fear, the State relies on her testimony regarding previous events. She testified that in the summer of 1989 Speese beat her when she told him she did not want to have sex with him. In January 1991, he

212

beat her again. In May 1991, he beat her and gave her a black eye.

It is not enough, Speese claims, to show that he applied force months or years before the charged crimes allegedly occurred. In view of Teresa's testimony that he did not use or threaten force or violence in connection with the three counts, Speese contends the evidence fails to support the verdict on those counts. He argues that Teresa's testimony regarding previous events is insufficient to establish the element of use or threat of force or violence in § 940.225(2)(a), STATS. We disagree.

In *State v. Jaworski*, 135 Wis. 2d 235, 400 N.W.2d 29 (Ct. App. 1986), we rejected essentially the same argument. We held that a reasonable trier of fact could infer that an initial threat of violence, made two to five days earlier than the charged sexual assaults, had lingered on the days the charged assaults occurred, and that the earlier threat had caused the victim to submit out of fear. *Id.* at 240, 400 N.W.2d at 31. We took into account the context of the threat. The victim and the defendant were inmates in the same cellblock, the defendant was larger and older, and the defendant had grabbed the victim by the throat and threatened further violence the first day of the victim's incarceration. *Id.* at 239-40, 400 N.W.2d at 30-31.

Speese argues that the evidence is "too attenuated" to prove beyond a reasonable doubt that he threatened or used force to achieve intercourse with Teresa in September 1991. He asserts that her subjective fear was unreasonable and insufficient to prove the threat or use of force. We disagree.

The jury could infer from the evidence that Teresa had good reason to fear Speese, he having used force on her on at least one prior occasion when she refused to

213

have sexual intercourse with him. The fact finder may take into account the context of the threat. *Jaworski*, 135 Wis. 2d at 239-40, 400 N.W.2d at 30-31. The context here is the relationship between Speese and Teresa and their respective ages. The relationship of some ten years' duration is between a stepfather and his juvenile female stepchild whom he has sexually abused throughout the period and beaten.[3]

■

We conclude that the evidence was sufficient for the jury to infer that Speese's earlier use of force or violence on Teresa carried over to the three sexual acts in September 1991 on which counts five through seven are based.

## II. MEDICAL RECORDS

Counts ten through twenty charged Speese with sexual contact and sexual intercourse with his step-daughter's friend Kari, who was fifteen years old,

---

[3] Other state courts have reached similar conclusions. *See Treadaway v. State*, 381 S.E.2d 43, 45 (Ga. Ct. App. 1989) (force as element of sodomy need not be actual violence, but can be "overpowering" influence stepfather exerts over his pre-teenage stepdaughter); *State v. Kulikowski*, 564 A.2d 439, 441-42 (N.H. 1989) (sexual intercourse held to have been performed by use of present threats even though threats complained of had occurred several years earlier, defendant having created environment of fear and control over stepdaughter); *State v. Eskridge*, 526 N.E.2d 304, 306 (Ohio 1988) (in view of child's obligation of obedience to parent, the degree of force and violence necessary may be less than that required where parties were more nearly equal in age, size and strength).

contrary to § 948.02(2), STATS.[4] Counts twenty-one and twenty-two charged him with exposing Kari to harmful material, contrary to § 948.11(2), STATS.[5] Count twenty-three charged him with having sexual contact with Kari, who was sixteen at the time of that alleged contact, contrary to § 940.225(3m), STATS.[6] All of the charged acts allegedly occurred in January, February and March of 1991.

Prior to trial, defense counsel requested access to Kari's medical records. Counsel stated in his pretrial motion that in February 1991, Kari received inpatient care in a local mental health facility, and that "given the lack of any referrals to local law enforcement, [counsel inferred] that [Kari] never reported the alleged sexual encounters occurring both before and after the inpatient treatment. The absence of reporting the alleged assaults to medical officials is exculpatory."

At the motion hearing, the State objected on grounds of confidentiality. The court directed the State to obtain Kari's records. At a later hearing the court announced it had examined her records and that they contained nothing relevant to the charges. The court refused to allow defense counsel to review the records, and refused to disclose their contents except that in February 1991, Kari had received inpatient psychiatric care.

On appeal, Speese contends that by depriving his counsel of the right to inspect Kari's medical records,

---

[4] "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony." Section 948.02(2), STATS.

[5] Violation of § 948.11(2), STATS., is a Class E felony.

[6] "Whoever has sexual contact with a person without the consent of that person is guilty of a Class A misdemeanor." Section 940.225(3m), STATS.

215

the trial court denied him his constitutional right to present a defense. He argues that his counsel showed the trial court that Kari's medical records were relevant to the charges. He contends that the records are not privileged because the court received them from the prosecutor without knowing whether the prosecutor looked at them. He asks us to conclude that the records are not privileged, and, in the alternative he requests a remand to allow the trial court to determine whether any of the records lost their confidential status by their disclosure to the district attorney's office.

Speese also asserts that even if the records are privileged, the court should have balanced his constitutional right to a fair trial against the State's interest in protecting its citizens by upholding a statutorily created privilege, as required by *State v. Shiffra*, 175 Wis. 2d 600, 609, 499 N.W.2d 719, 723 (Ct. App. 1993).[7] He contends we should remand for an investigation to determine what Kari was asked while hospitalized and what her responses were, and, in the alternative, if she does not release her medical records, we should reverse his conviction and order a new trial without her testimony.

A.   Waiver of Privilege

A patient possesses a privilege against disclosure of confidential communications. Section 905.04(2), STATS.,[8] provides in relevant part:

---

[7] *Shiffra* was decided after the trial court heard Speese's motion to inspect Kari's medical records. *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993).

[8] Although § 905.04(2), STATS., 1989-90, is the relevant statute here, we refer to the current § 905.04(2). They differ only in

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, . . . the patient's psychologist, . . . or persons . . . who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, . . . [or] psychologist . . . .

During one hearing, the trial court stated that it received Kari's records in a sealed envelope from the assistant district attorney, but it did not know whether she had looked at them. Speese contends that the records lost their confidential status because the district attorney's office had access to them.

We find from our examination of the contents of the envelope that the time stamp of the district attorney's office appears on the back of a number of the medical records, including those from Kari's February 1991 psychiatric hospitalization. The only inference from that stamp is that the district attorney had access to those records. However, we reject Speese's contention that because the State had access to them, Kari's records lost their confidential status. Kari could waive her privilege under § 905.04, STATS., but the State could not unilaterally deprive her of the privilege.

A privilege holder waives the privilege if he or she voluntarily discloses or consents to disclosure of any

that the current statute expands the list of persons to include the patient's social worker, marriage and family therapist and professional counselor.

217

significant part of the matter or communication.[9] Section 905.11, STATS. Accordingly, if Kari, as the holder of the privilege, voluntarily consented to inspection of any given medical record by the district attorney's office, then she waived the patient privilege under § 905.04, STATS., as to that record. We cannot tell from the record whether she consented, and if she did whether her consent was voluntary.

While the envelope contains authorizations signed by Kari and her mother permitting various clinics, hospitals and a doctor to furnish a copy of all records pertaining to any treatment and/or hospitalization for injury occurring to Kari and allowing the district attorney's office to inspect or copy those records, it contains no such *signed* authorization covering Kari's psychiatric records. It contains only a document drafted to permit the hospital to furnish a copy of psychological reports and psychiatric records pertaining to Kari and to allow the district attorney's office to inspect or copy them, but it does not bear the signature of Kari or her mother.

If Kari voluntarily consented to disclosure of her February 1991 psychiatric records to the district attorney's office,[10] the trial court should have allowed

---

[9] This rule does not apply if the disclosure is itself a privileged communication. Section 905.11, STATS.

[10] If a consent is voluntary and allows disclosure of a significant part of a communication, it cannot be limited to one person. Section 905.11, STATS., is, in this respect, in accord with the prior case law. *Compare Cretney v. Woodmen Accident Co.*, 196 Wis. 29, 219 N.W. 448 (1928) *and Alexander v. Farmers Mut. Auto. Ins. Co.*, 25 Wis. 2d 623, 628, 131 N.W.2d 373, 376 (1964) (holder of patient privilege cannot limit waiver of privilege to communications to one physician and not to another physician who treated the same patient). To permit such a limitation

Speese's counsel to inspect those records and a new trial will be necessary on all counts regarding Kari, except count twenty-one.[11] Our independent review of the records convinces us that the error was not harmless.

■

On remand, the trial court shall determine whether Kari voluntarily consented to disclosure. Even if she did not consent, or her consent was not voluntary, then for the reasons stated in the next part of this opinion, a new trial is nevertheless necessary because the trial court should have ordered that Kari either give her consent or not testify.

B.   Order to Waive or Not Testify

■

The patient privilege in § 905.04(2), STATS., is absolute in the sense that nothing in the statute authorizes a court to use a communication within the privilege for any purpose in a criminal action.[12] In *Shiffra*, 175 Wis. 2d at 612, 499 N.W.2d at 724, we treated the privilege as absolute.

---

would be "unjust and unfair." *Cretney*, 196 Wis. at 36, 219 N.W. at 450, *quoted with approval in Alexander*, 25 Wis. 2d at 628, 131 N.W.2d at 376. To permit a principal witness for the State to restrict disclosure of privileged and relevant evidence in a criminal case only to the State would be unacceptable.

[11] We affirm count twenty-one, exposing Kari to harmful material, § 948.11(2), STATS., because Teresa testified in support of that count. Any error is harmless.

[12] Section 905.04(4), STATS., creates exceptions to the privilege, but it does not allow a court to order disclosure when the privilege exists.

■ On the other hand, a criminal defendant has a right to put before a jury evidence that might influence the determination of guilt. *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). The right of pretrial access to exculpatory evidence necessary for a defendant to prepare a defense is protected by the Due Process Clause of the Fourteenth Amendment. *Id.*

■ However, the defendant's right of access does not include unsupervised authority to search confidential material. *Ritchie*, 480 U.S. at 59. Similarly, defense counsel has no constitutional right to search through information, regarding a witness, made privileged by statute. *Id.* Assuming Kari never voluntarily consented to disclosure, the trial court properly denied Speese's counsel access to Kari's medical records. But that does not end our inquiry.

■ A defendant's right to a fair trial may be protected without destroying the State's need to protect the confidentiality of certain information. The defendant who is aware of specific information in a confidential file "is free to request it directly from the court, and [to] argue in favor of its materiality." *Ritchie*, 480 U.S. at 60. Under those circumstances, the trial court's *in camera* review to determine materiality will protect the defendant's interest. *Id.* at 61.

Unlike the patient privilege in § 905.04(2), STATS., the statute before the *Ritchie* court did not create an absolute privilege against disclosure. It did not prevent a court from ordering disclosure. *Ritchie*, 480 U.S. at 57-58. The *Ritchie* court reserved the question whether the result is different when the statute protects confidential material "from disclosure to *anyone*, including

law-enforcement and judicial personnel." *Id.* at 57 n.14. We nevertheless held in *Shiffra* that Wisconsin precedents make *Ritchie* applicable to cases in which the criminal defense seeks information absolutely protected by the patient privilege in § 905.04, STATS.[13] *Shiffra*, 175 Wis. 2d at 606-07, 499 N.W.2d at 722.

Relying on *Ritchie*, we concluded in *Shiffra* that when a criminal defendant seeks access to records privileged under § 905.04(2), STATS., and makes a preliminary showing that the privileged information is material to the defense, the defendant is entitled to an *in camera* inspection of the records. *Shiffra*, 175 Wis. 2d at 607, 499 N.W.2d at 722. We held that if the witness possessing the privilege refuses to consent to an *in camera* inspection, the trial court should suppress the witness's testimony. *Id.* at 612, 499 N.W.2d at 724-25.[14] We reasoned that

> no other sanction would be appropriate. The court did not have the authority to hold [the witness] in contempt because she is not obligated to disclose

---

[13] The cited precedents are *In re K.K.C.*, 143 Wis. 2d 508, 422 N.W.2d 142 (Ct. App. 1988), and *State v. S.H.*, 159 Wis. 2d 730, 465 N.W.2d 238 (Ct. App. 1990). In *K.K.C.*, § 48.78(2), STATS., authorized disclosure of a juvenile record on court order. *K.K.C.*, 143 Wis. 2d at 509-10, 422 N.W.2d at 143. In *S.H.*, the patient-privilege statute, § 905.04, STATS., was involved, but we cited *K.K.C.* when we said that if a defendant makes the necessary preliminary showing, he or she is entitled to an *in camera* review by the trial court. *S.H.*, 159 Wis. 2d at 738, 465 N.W.2d at 241. We did not decide whether the defendant had made the preliminary showing, and we did not reach the trial court's refusal to conduct an *in camera* review pursuant to *Ritchie*. *Id.*

[14] The supreme court of Michigan reached a similar conclusion in *People v. Stanaway*, 521 N.W.2d 557, 577 (Mich. 1994), *cert. denied sub nom. Michigan v. Caruso*, 115 S. Ct. 923 (1995).

her psychiatric records. . . . Under the circumstances, the only method of protecting [the defendant's] right to a fair trial was to suppress [the witness's] testimony if she refused to disclose her records.

*Id.*

We therefore next determine whether Speese made a preliminary showing that any of Kari's medical records are material to his defense. The preliminary showing of materiality must establish that a record is relevant and may be necessary to a fair determination of the defendant's guilt or innocence. *Shiffra,* 175 Wis. 2d at 610, 499 N.W.2d at 723.

In *Shiffra* we treated the preliminary showing issue as raising a question of law. We did so because the issue involves a defendant's constitutional right to a fair trial. *Shiffra,* 175 Wis. 2d at 605, 609, 499 N.W.2d at 721, 723. The right to a fair trial is guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and whether a criminal defendant has been accorded due process is itself a question of law. *State v. Littrup,* 164 Wis. 2d 120, 126, 473 N.W.2d 164, 166 (Ct. App. 1991).

The preliminary showing issue raises a question of law notwithstanding the general rule stated in *State v. Pharr,* 115 Wis. 2d 334, 345, 340 N.W.2d 498, 503 (1983), that relevancy is normally a determination left to the discretion of the trial court. Relevancy is part and parcel of the due-process question whether access to a privileged record may be necessary for a fair determination of guilt or innocence. We therefore review Speese's motion for access to Kari's medical records without deference to the trial court's ruling.

■ We conclude that Speese made the required preliminary showing that his access to Kari's February 1991 psychiatric records may be necessary to a fair determination of his guilt or innocence. The charges against Speese include eleven counts alleging that in January and February 1991, he had sexual intercourse and sexual contact with Kari, who had not attained the age of sixteen. Section 948.02(2), STATS. Her hospitalization occurred in February 1991. Had she told the hospital staff that Speese sexually abused her, the staff would have been required to report that sexual abuse to the county or sheriff or police. Section 48.981(2) and (3), STATS., 1989-90.[15] Kari's sexual abuse was first reported to the police in September 1991, by her mother and Teresa's mother. A reasonable inference is that Kari did not tell the hospital staff about Speese's sexual abuse of her.

---

[15] Section 48.981(2), STATS., 1989-90, provides that a physician or other medical or mental-health professional, among others, having reasonable cause to suspect that a child seen in the course of professional duties has been abused shall, except as provided, report the matter as provided in subsec. (3). Paragraph (3)(a) provides that a person required to report under subsec. (2) shall immediately inform the county department, sheriff or city police department of the facts and circumstances contributing to the person's suspicion of child abuse. A health care provider who provides services to a child must report suspected sexual intercourse or sexual contact involving a child if the provider has reason to suspect that the intercourse or contact was with a person who has provided care for the child outside of the child's home or has resided intermittently in the same dwelling as the child. Section 48.981(2m)(d)1.e and f, STATS. Kari testified that she and Speese had intercourse and contact during the two-week period she lived at his home beginning in January 1991.

It may be necessary for a fair determination of Speese's guilt or innocence that the jury know that Kari claims Speese had sexual intercourse and sexual contact with her on eleven occasions shortly before her psychiatric hospitalization but appears not to have told the hospital staff about any of those occurrences. Without an explanation for her silence, a jury might disbelieve Kari's testimony in support of those eleven counts. It might also discount her testimony in support of the counts that allegedly occurred after her hospitalization, count twenty-two, exposing a child to harmful material, § 948.11(2), STATS., and count twenty-three, nonconsensual sexual contact, § 940.225(3m), STATS.

Because Speese made the required preliminary showing as to Kari's February 1991 psychiatric records, the trial court should have ordered that unless Kari consented to an *in camera* inspection of those records, she would not be permitted to testify at the trial. *Shiffra*, 175 Wis. 2d at 612, 499 N.W.2d at 724-25. The court did not so order. Instead, not having the benefit of *Shiffra*, it examined the records and declared they contain nothing relevant to the charges.

Since that has occurred, we, too, have examined the records to determine whether they contain evidence that is indeed material to the defense. Evidence is material if there is a reasonable probability that had it been disclosed to the defense, the result of the trial would have been different, and a "reasonable probability" is one sufficient to undermine our confidence in the outcome. *State v. Mainiero*, 189 Wis. 2d 80, 88, 525 N.W.2d 304, 307 (Ct. App. 1994).

We decline to state what we find and do not find in Kari's psychiatric records. We hope to protect her from

unnecessary public disclosure of her records. We go no further than to state our independent conclusion that Kari's 1991 psychiatric hospitalization records contain information that undermines our confidence in the trial's outcome. Unless she voluntarily consented to disclosure, she continues to possess the absolute right under § 905.04(2), STATS., to prevent disclosure. If she did not consent to disclosure and she refuses to ratify the examinations by the trial court and this court, the trial court may order a new trial without her testimony. That will at least prevent further disclosure without her consent.

Our analysis requires that we reverse the convictions of Speese on counts ten through twenty and twenty-three, sexually assaulting Kari, and count twenty-two, exposing Kari to harmful material, and that we order a new trial on those counts. As we explained earlier, we affirm count twenty-one.

If Kari does not waive her privilege under § 905.04(2), STATS., as to the hospital records, the trial court shall not allow her to testify at a new trial. As in *Shiffra*, 175 Wis. 2d at 612, 499 N.W.2d at 724, no other disposition would be appropriate under such circumstances.

## III. JURY INSTRUCTIONS

Speese asserts the jury instructions denied him his right to a unanimous verdict under article I, sections 5 and 7 of the Wisconsin Constitution, and the Fifth and Sixth Amendments to the United States Constitution. He claims constitutional error with regard to counts one and two. Count one charged Speese with one count of sexual contact with Teresa "during the year of 1986."

Section 940.225(1)(d), STATS., 1983-84.[16] Count two charged him with one count of sexual intercourse with her "in 1987." Section 940.225(1)(d), 1985-86. The verdicts submitted to the jury on those counts refer to "the year of 1986" and "1987," respectively. Speese notes that Teresa testified that the first act of intercourse occurred in the summer of 1987 and acts of intercourse occurred at least twice a week from that point on. He asserts the jury should have been told that to find him guilty on each count, all jurors must agree on which act he committed, and because the jury heard claims of numerous sexual assaults over a long period, the instruction was necessary to ensure a unanimous verdict.

However, at trial Speese failed to object to the standard jury instruction on unanimity. Under § 805.13(3), STATS., that failure constitutes a waiver of the claimed instructional error. The court of appeals has "no power to reach the unobjected-to instructions," except to exercise its discretionary power under § 752.35, STATS., to order a new trial in the interest of justice. *State v. Schumacher*, 144 Wis. 2d 388, 408-09, 424 N.W.2d 672, 679-80 (1988).

Speese urges us to consider the claimed instructional error even though he filed no postconviction motion and first identified the issue on appeal. He states that if we do not consider the issue, it will be raised in a later proceeding alleging ineffective assistance of appellate counsel, resulting in a petition to this court for a writ of habeas corpus. *See State v. Knight*, 168 Wis. 2d 509, 520, 484 N.W.2d 540, 544 (1992). He

---

[16] Whoever has sexual contact or sexual intercourse with a person twelve years of age or younger is guilty of a Class B felony. Section 940.225(1)(d), STATS., 1983-84.

urges that we review the issue now in the interest of judicial economy. We decline to exercise our discretionary power to reach the unobjected-to instructional error in this appeal.

The court of appeals' power under § 752.35, STATS., includes the discretionary power to review an ineffective-assistance-of-counsel claim. *Schumacher*, 144 Wis. 2d at 408-09 n.14, 424 N.W.2d at 680. However, we generally will not review an ineffective-assistance-of-counsel claim in the absence of a hearing at which trial counsel testifies. *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908 (Ct. App. 1979). When a claim is made that appellate counsel has been ineffective for failure to raise trial counsel's ineffective assistance, the *Knight* remedy is a petition to the court of appeals for habeas corpus. We usually refer the habeas petition to the trial court, because whether, as here, appellate counsel was ineffective turns on whether trial counsel was ineffective, and that issue ordinarily requires a *Machner* hearing. We will not act before a *Knight* petition is filed.

## IV.  NEW TRIAL IN INTEREST OF JUSTICE

We may exercise our power under § 752.35, STATS., to order a new trial only when it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried.

Except for the convictions we reverse, the real controversy between Speese and the State has been fully tried. We are not satisfied that it is probable that justice has miscarried as to the remaining counts. To order a new trial on the latter ground, we must find a substantial probability that a second trial would pro-

227

duce a different result. *Vollmer v. Luety*, 156 Wis. 2d 1, 19, 456 N.W.2d 797, 804 (1990). We are unable to make that finding.

## V. COUNTS AFFIRMED AND REVERSED

Although Speese asks us to reverse on all counts, we see no reason to do so with respect to any of the counts involving Teresa, counts one through eight. He provides no specific argument with regard to his convictions on counts three and four, physical abuse of a child, § 948.03(2)(b), STATS., and count eight, exposing a child to harmful material, § 948.11(2)(a), STATS.

In summary, we reverse the convictions on all counts regarding Kari, except count twenty-one, and order a new trial on those counts. The convictions reversed are on counts ten through twenty, twenty-two and twenty-three. Sections 940.225(3)(m), 948.02(2), and 948.11(2), STATS.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.