IN the MATTER OF the GUARDIANSHIP OF TINA MARIE W., Incompetent:

WINNEBAGO COUNTY, Department of Social Services, Petitioner-Respondent,

v.

HAROLD W., Respondent-Appellant.

Court of Appeals

*No. 96–2733. Submitted on briefs October 24, 1997.—Decided December 3, 1997.*

(Also reported in 573 N.W.2d 207.)

On behalf of the respondent-appellant, the cause was submitted on the brief of *Robert G. LeBell* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James A. Kearney*, assistant corporation counsel, Neenah.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

NETTESHEIM, J. Harold W. appeals from a trial court order removing him as coguardian of his daughter, Tina Marie W. Harold raises challenges to three evidentiary rulings made by the trial court. First, Harold contends that the trial court erroneously refused him access to the medical records of a nonparty witness. Second, Harold argues that the trial court erred by admitting evidence of prior inconsistent

statements made by his coguardian and wife, Marie W. Third, Harold contends that the trial court erred by admitting evidence of his prior bad acts. As an additional issue, Harold challenges the sufficiency of the evidence. We reject each of Harold's arguments. We affirm the trial court's removal order.

## *FACTS*

Tina is a twenty-one-year-old woman who suffers from severe disabilities including cerebral palsy, mental retardation and a seizure disorder. Tina cannot speak, walk or feed herself. It is undisputed that Tina is incompetent and unable to care for herself. Since December 1993, Tina's parents, Harold and Marie, have been coguardians of both Tina and her estate.

On January 5, 1996, an agency representative of the Winnebago County Department of Social Services filed an affidavit for emergency protective placement of Tina pursuant to ch. 55, STATS. The affidavit was based upon allegations of prior inappropriate sexual conduct by Harold toward Tina and a current allegation of similar behavior witnessed by a friend of Marie, Diane F., in Marie's presence. That same day, Tina was taken into the custody of the department pursuant to § 55.06(11)(a), STATS.

On January 9, 1996, the department filed a petition for the appointment of a successor guardian and for protective placement. The petition alleged that "Tina is unable to defend herself against any assault from her guardians. Due to the allegations of sexual improprieties, and Tina's inability to report such events; Tina needs to be protected from the possibility of such events." The department requested that Tina be placed outside of the home. A probable cause hearing was conducted before a court commissioner

pursuant to § 55.06, STATS. After determining that there was probable cause to believe that Tina would be at substantial risk of serious harm if removed from her temporary placement, the court commissioner appointed Oshkosh Family, Inc., a corporate guardian, as Tina's temporary guardian. Oshkosh Family, Inc., remained as Tina's temporary guardian throughout the proceedings.

On March 1, 1996, the department's petition for protective placement was converted to a petition for the removal of both Harold and Marie as coguardians and for the appointment of a successor guardian under § 880.251, STATS. The supplemental allegations supporting the department's petition were as follows: (1) Harold engaged in sexual improprieties against Tina; (2) Marie had knowledge of such events and she failed to take steps to protect Tina; (3) Harold and Marie had authorized Tina to receive a hysterectomy without obtaining court approval; (4) Harold and Marie had misappropriated funds belonging to Tina; and (5) Harold and Marie had failed to provide a suitable and safe environment for Tina.

The trial court held a hearing on the petition over a six-day period. At the conclusion of the hearing, the trial court determined that the department had failed to meet its burden of proof with respect to its allegations against Marie. The court additionally determined that it was in Tina's best interests that Marie continue as guardian of her person. However, the court found that the department had met its burden as to the allegations against Harold. The court concluded that Harold's removal as coguardian was necessary to serve Tina's best interests. Harold appeals. We will recite additional facts as they relate to the appellate issues.

## DISCUSSION

### 1. Introduction

Before we address the specific appellate issues we make some important threshold observations. First, a guardian owes the ward absolute fidelity. *See Yamat v. Verma L.B.*, 214 Wis. 2d 207, 216 & n.3, 571 N.W.2d 860, 864 (Ct. App. 1997). As such, a guardian owes a fiduciary duty to the ward. *See Production Credit Ass'n v. Crost*, 143 Wis. 2d 746, 752, 423 N.W.2d 544, 546 (Ct. App. 1988). Manifest in the existence of a fiduciary relationship is an inequality, dependence, weakness of age, or mental strength, business intelligence, knowledge of facts involved, or other conditions giving to one an advantage over the other. *See id.* at 755–56, 423 N.W.2d at 547. A guardian of an incompetent ward clearly stands in a position of advantage over the ward as to all of these considerations.

Second, the overriding concern in a guardianship proceeding is the best interests of the ward. *See* § 880.33, Stats. *See also Brezinski v. Barkholtz*, 71 Wis. 2d 317, 328, 237 N.W.2d 919, 924 (1976). As such, the trial court must be vigilant in assuring that a guardian properly protects the ward's interests. *See Grayson v. Linton et al.*, 125 P.2d 318, 320 (Idaho 1942).

Third, no person has a legal right to serve as a guardian.[1] Rather, guardianship status is a privilege,

---

[1] We acknowledge that § 880.09(2), Stats., accords Harold, as Tina's father, a statutory preference over others to serve as Tina's guardian. However, that preference is always subject to the trial court's responsibility to assure that the guardian serves the ward's best interests.

with a concomitant duty, conferred upon the guardian by the trial court in the exercise of its discretion. *See Brezinski,* 71 Wis. 2d at 327, 237 N.W.2d at 924 (the appointment of a guardian is within the trial court's discretion).

## 2. *The Statutes*

Section 880.33, STATS., governs the appointment of a guardian for an incompetent. That statute provides in relevant part:

> (5) In appointing a guardian, the court shall take into consideration the opinions of the alleged incompetent and of the members of the family as to what is in the best interests of the proposed incompetent. However, the best interests of the proposed incompetent shall control in making the determination when the opinions of the family are in conflict with the clearly appropriate decision. The court shall also consider potential conflicts of interest resulting from the prospective guardian's employment or other potential conflicts of interest. . . .

It is undisputed in this case that Tina is incompetent to care for herself and has been adjudicated as such. In making its initial guardianship determination, the trial court appointed Harold and Marie as Tina's coguardians. Under § 880.34, STATS., which governs the duration and review of a guardianship appointment, "[a]ny guardianship of an individual found to be incompetent under this chapter shall continue during the life of the incompetent, or until terminated by the court." Section 880.34(1). Pursuant to § 880.34(3), "[a] ward of the age of 18 or over, any interested person on the ward's behalf or the ward's guardian may petition the court which made

such appointment . . . to have the guardian discharged and a new guardian appointed . . . ." Section 880.16(2), STATS., provides, "When any guardian fails or neglects to discharge the guardian's trust the court may remove the guardian after such notice as the court shall direct to such guardian and all others interested."

### 3. The Appellate Issues

#### A. Access to Diane F.'s Medical Records

In support of its petition to terminate Harold's guardianship of Tina, the department presented testimony from Marie's friend, Diane F., that Harold engaged in inappropriate sexual contact with Tina. Diane testified that on December 22, 1995, Marie asked her to baby-sit for Tina. Diane testified that "[w]hen Harold was saying good-bye to Tina, he rubbed his right hand over her chest . . . [o]ver the breast part of her body and right on top of the nipples." Diane was also permitted to testify that Marie told her that Harold was "starting to run around in his shorts again and in front of Tina and coming into Tina's bedroom." Diane additionally testified as to her conversations with Marie regarding the marital problems Marie and Harold had experienced and Marie's concern about Harold's relationship with Tina. Finally, Diane testified that Marie "always had to beg for money from Harold" and that Marie did not want Harold to know when she purchased a new chair for Tina.

Harold argues that Diane's testimony was the "crucial, almost exclusive evidence" in support of the department's allegations of sexual abuse. Harold contends that because Diane had a lengthy psychiatric history, including a diagnosis of schizophrenia, the trial court erroneously denied his requests to access

her psychiatric records. As a result, Harold maintains that he was denied crucial information which may have been used to demonstrate that Diane's "perception, memory, judgment and concentration were all adversely affected by such conditions" on December 22, 1995, the date on which Diane claimed to have witnessed Harold's inappropriate behavior.

"A trial court's rulings on discovery are discretionary and will be upheld if they are 'consistent with the facts of record and established legal principles.' " *Ranft v. Lyons*, 163 Wis. 2d 282, 290, 471 N.W.2d 254, 257 (Ct. App. 1991) (quoted source omitted).

Harold concedes on appeal that there is no case law which supports his request that the trial court order discovery of a nonparty witness's medical records in a civil action. Instead, Harold requests this court to extend our holdings in the criminal cases of *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), and *State v. Speese*, 191 Wis. 2d 205, 528 N.W.2d 63 (Ct. App. 1995), *rev'd on other grounds*, 199 Wis. 2d 597, 545 N.W.2d 510 (1996). We decline to do so.

In both *Shiffra* and *Speese*, this court addressed the circumstances under which a defendant could have access to the victim's—a nonparty witness's—medical records. *See Shiffra*, 175 Wis. 2d at 602, 499 N.W.2d at 720; *Speese*, 191 Wis. 2d at 210, 528 N.W.2d at 65. We held that a defendant who seeks access to a witness's medical records must make a preliminary showing that the evidence is relevant and is necessary to a fair determination of guilt or innocence. *See Shiffra*, 175 Wis. 2d at 608, 499 N.W.2d at 723; *Speese*, 191 Wis. 2d at 221, 528 N.W.2d at 69.

Harold contends that "there should be no distinction which should be drawn against civil and criminal litigants and no distinction drawn between the alleged victim and a non-party opposing witness." We disagree. A party to a civil proceeding is not entitled to the full panoply of rights accorded persons subject to criminal process. *See State ex rel. Vanderbeke v. Endicott*, 210 Wis. 2d 503, 514, 563 N.W.2d 883, 887 (1997). The standard of discovery set forth in *Shiffra* concerns an accused's right to present a defense; it does not extend to the civil forum.

The proper basis upon which a party may attain access to the medical records of a *party* to a civil matter under the discovery rule, § 804.01(2)(a), STATS., was discussed by this court in *Ranft*, 163 Wis. 2d at 290–94, 471 N.W.2d at 257. There, the court determined that a party's medical records which fall under the physician/patient privilege, *see* § 905.04(2), STATS., could only be accessed if the party has put his or her physical or mental condition in issue as a component of the party's claim or defense. *See id.* at 294, 471 N.W.2d at 258–59; *see also* § 905.04(4)(c). However, the *Ranft* holding does not extend to a nonparty witness in a civil proceeding.

Moreover, we are unpersuaded that the information in Diane's medical records would have significantly altered the information already before the court regarding her mental condition. Diane was cross-examined at length regarding her protracted psychiatric history. She testified that she was taking prescription medication for depression, anxiety and panic attacks. She additionally acknowledged that she

was diagnosed as a schizophrenic in the 1980's and receives therapy and medication for this illness. When she stops taking her medication for schizophrenia she has problems with perception and sometimes perceives things which are not real. She has not been off of her medication since 1993. She nevertheless had a period of hallucinations in June 1995 during which she would see bugs crawling across the floor. As part of manic depression and schizophrenia, she is also subject to paranoia. Given Diane's candid testimony, we fail to see what light any additional information from her medical records would shed on her credibility. The trial court's decision confirms our observations. The court stated that it was fully aware that Diane suffered from mental illness and weighed her credibility with this condition in mind.

We affirm the trial court's ruling denying Harold access to Diane's medical records.

### B. Marie's Prior Inconsistent Statements

Next, Harold raises a challenge to the trial court's rulings permitting the testimony of others concerning statements which Marie had made to them concerning Harold's conduct. This became an issue at the trial because Marie's stance as to Harold's fitness to serve as Tina's coguardian had changed. Prior to the proceedings in this case, Marie had made certain statements critical of Harold. However, during the proceedings, Marie was generally supportive of Harold's efforts to continue as Tina's coguardian.

Marie told several people prior to the proceedings that Harold had engaged in inappropriate sexual behavior with Tina and that he refused to spend money

on medical equipment for Tina.[2] Prior to trial, Harold filed a motion in limine arguing that Marie's prior statements should not be admitted. The trial court denied Harold's motion, ruling that the statements were not hearsay and might be relevant to the issue of whether Tina's best interests were being served by having Marie and Harold continue as coguardians.

The admissibility of evidence lies within the sound discretion of the trial court. *See State v. Pepin*, 110 Wis. 2d 431, 435, 328 N.W.2d 898, 900 (Ct. App. 1982). When we review a discretionary decision, we examine the record to determine if the trial court logically interpreted the facts and applied the proper legal standard. *See State v. Rogers*, 196 Wis. 2d 817, 829, 539 N.W.2d 897, 902 (Ct. App. 1995).

On appeal, Harold argues that the trial court erroneously held that the statements made by Marie were an admission of a party opponent under § 908.01(4)(b), STATS. Harold contends that although Marie's prior statements were admissible to support Marie's removal as guardian, the statements were not

---

[2] This evidence encompasses testimony from several people concerning statements Marie had made to them regarding Harold's sexual impropriety with Tina and his control over Tina's finances. Specifically, Harold points to Diane's testimony which we have already addressed. He also points to a statement signed by Marie following an interview with Detective Ron Lewis. In the signed statement, Marie accuses Harold of sexually and verbally abusing her and acting sexually inappropriate with Tina. Harold also points to testimony of Tina's special education teacher that Harold refused to have a "lift" installed in their van so that Tina could be more easily transported. Tina's teacher also testified that Marie told her that Harold walks around in the nude in front of Tina in spite of Marie's request that he stop.

made by him and were not admissible against him. Harold's argument misses the mark because we do not read the trial court's ruling as premised upon the evidentiary rule governing admissions of a party opponent.

■

As we have noted, Marie's stance during the trial court proceedings was generally supportive of Harold's contention that he should not be removed as Tina's guardian. Consistent with this stance, Marie testified that she did not make the statements against Harold attributed to her by other witnesses. Thus, the statements made by Marie prior to trial were inconsistent with her testimony at trial. Section 908.01(4), STATS., defines "statements which are not hearsay." According to § 908.01(4)(a)1, a prior inconsistent statement by a witness is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement." Because the prior statements attributed to Marie by other witnesses were inconsistent with her testimony at trial and because Marie testified at trial and was subject to cross-examination, the statements were properly admitted by the trial court as nonhearsay.

As a final matter, we note that, although admitting this evidence, the trial court gave little weight to it. Instead, the court found Marie's testimony at trial in which she repudiated many of her statements regarding Harold's sexual impropriety towards Tina to be more credible than the evidence of her prior statements. With respect to the signed statement, the trial court specifically noted that "the interview was extremely coercive . . . I conclude that the repudiated portions are unreliable." Instead, the

trial court based its finding with respect to Harold's removal upon those portions of the statement which Marie affirmed at trial: "Harold's nudity and his lifting of Tina's shirt and 'woo-woo'ing at her breasts, unspecified domestic abuse and verbal abuse, and control of her finances and actions." Thus, the admission of Marie's prior inconsistent statements, while proper, was also de minimis in the trial court's ultimate decision.

## C. Evidence of Harold's Prior Bad Acts

■■

Finally, Harold argues that the trial court erroneously exercised its discretion when it admitted evidence of his prior bad acts. In reviewing the admissibility of evidence, we determine whether the trial court exercised its discretion in accordance with accepted legal standards and the facts of record. *See State v. Kuntz*, 160 Wis. 2d 722, 745, 467 N.W.2d 531, 540 (1991). If there is a reasonable basis for the trial court's determination, we will uphold the ruling. *See id.* at 745–46, 467 N.W.2d at 540.

Harold contends that the following evidence was admitted contrary to § 904.04(2), STATS., which governs other acts evidence: a 1994 claim of sexual abuse by Harold upon Marie; Marie's statement to Detective Ron Lewis; a petition filed by Marie for a domestic violence injunction against Harold; various descriptions of Harold walking nude in front of Tina; Diane's testimony that Harold sexually assaulted Marie; and various claims that Harold did not give Marie adequate funds for the benefit of Tina.

In overruling Harold's objection to this evidence, the trial court stated:

[I]t would seem that within the bounds of relevance which is basically your Whitty concern that character is an aspect of suitability not being used that a particular alleged sexual assault against the ward occurred but as the environment in which the ward is being cared for, and to what extent we may not reach the other aspect because we are not talking about the specific allegations of sexual assault on the ward.

We agree with the trial court that the evidence was relevant and, as such, admissible. *See* §§ 904.01 and 904.02, STATS. Contrary to Harold's suggestion, the focus of the guardianship proceeding was not to determine his innocence or guilt with respect to the December 22, 1995 allegation of sexual impropriety. Rather, the purpose of the proceeding was to determine whether Tina's best interests would be served if Harold remained a coguardian over her person and estate.

Section 904.01, STATS., defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevancy is an elastic concept which must be assessed in light of the nature of the proceeding. If this were a criminal proceeding, this evidence perhaps would have been inadmissible. But, as we have noted, the issue here was whether Tina's best interests would be served by allowing Harold to continue serving as her coguardian. Harold's prior conduct and character were extremely relevant on that critical question. We affirm the trial court's admission of this evidence.

### D. Sufficiency of Evidence

As a final matter, we reject Harold's argument that the evidence was insufficient to warrant his removal as Tina's coguardian. Harold's argument is conditioned upon our agreeing with his challenges to the trial court's evidentiary rulings. Since we have upheld those rulings, we conclude that the evidence supports the trial court's rulings.

### CONCLUSION

We conclude that the trial court properly denied Harold access to Diane's medical records. We further conclude that the trial court did not erroneously exercise its discretion when it admitted evidence of Marie's prior inconsistent statements and Harold's prior bad acts. We affirm the order.

*By the Court.*—Order affirmed.